```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF OKLAHOMA

TAUNI SUE CAUTHON,               )
                                 )
          Plaintiff,             )
                                 )
                                 )  Case No. CIV-20-301-RAW-KEW
                                 )
COMMISSIONER OF THE SOCIAL       )
SECURITY ADMINISTRATION,         )
                                 )
          Defendant.             )
```

## REPORT AND RECOMMENDATION

Plaintiff Tauni Sue Cauthon (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. She appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 43 years old at the time of the ALJ's decision. She has a limited education and no past relevant work. Claimant alleges an inability to work beginning on July 26, 2018, due to limitations resulting from social anxiety disorder, anxiety, depression, blindness in the left eye, back injury, and injured ankles.

### Procedural History

On July 26, 2018, Claimant protectively filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On

3

November 18, 2019, ALJ Lantz McClain conducted a hearing in Tulsa, Oklahoma, at which Claimant testified. On December 10, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on June 29, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to properly evaluate, consider, and weigh the medical evidence; (2) failing to adequately account for Claimant's mental impairments and provide a psychological consultative examination; (3) failing to follow the required legal standards regarding Claimant's obesity; and (4) failing to perform a proper consistency determination.

### Step Two and Four Analysis

In his decision, the ALJ found Claimant suffered from severe impairments of blindness in the left eye, depression, anxiety, and

4

obesity. (Tr. 17). He determined Claimant could perform light work, except because of her blindness in the left eye, she could not do work requiring good peripheral vision or depth perception. She was limited to simple, repetitive tasks and could only interact with supervisors and co-workers occasionally and could not interact with the general public. (Tr. 19).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of housekeeping cleaner and laundry sorter, both of which the ALJ found existed in sufficient numbers in the national economy. As a result, the ALJ concluded Claimant had not been under a disability since July 26, 2018, the date the application was filed. (Tr. 26).

Claimant argues that the ALJ erred at step two and later steps of the sequential evaluation process by failing to consider her chronic back pain, hypertension, and that she was "suspicious for polyarthritis based on examination – pattern is suspicious for inflammatory joint disease." She also contends that the ALJ failed to account for findings from the consultative examiner showing that she exhibited weak heel walking bilaterally and that her "bilateral wrists, knees, and ankles have moderate joint effusion." Claimant asserts the ALJ was not only required to determine whether these conditions were severe, but he was also required to account for them throughout the disability analysis.

5

At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A claimant must demonstrate she has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007), quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28, 1985 WL 56856 (Jan. 1, 1985).

To the extent Claimant contends her chronic back pain, hypertension, and possible inflammatory joint disease should have been determined severe at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of a claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the

6

ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008).

The ALJ considered Claimant's chronic back pain, hypertension, and possible inflammatory joint disease, including the findings by the consultative examiner, in his discussion of the evidence and assessment of Claimant's RFC. He specifically mentioned Claimant's allegations that her ability to work was limited by a back injury, injuries to both ankles, and her knees. (Tr. 20). In discussing the evidence, the ALJ noted instances in October of 2017 and again in January of 2018 when Claimant exhibited normal gait and station. (Tr. 21-22, 261, 267). In April of 2018, Claimant exhibited tenderness and pain with lumbar range of motion and was assessed with low back pain. (Tr. 22, 287-89). At an examination in August of 2018, however, Claimant was ambulating normally and her musculoskeletal examination revealed normal motor strength and tone, normal movement of all extremities, and no cyanosis or edema of the extremities. (Tr. 22, 305-07).

The ALJ discussed in detail the findings of consultative examiner Harold DeLaughter, D.O., from his examination of Claimant in October of 2018. Among other findings, Dr. DeLaughter noted Claimant had a normal range of motion of the spine, straight leg raise testing was negative bilaterally in the seated and supine

7

positions, toe walking was normal, heel walking was weak bilaterally due to ankle pain, Claimant's bilateral wrists, knees, and ankles had moderate joint effusion, and Claimant ambulated with a stable but antalgic gait at a decreased speed and without an assistive device. Dr. DeLaughter assessed Claimant with left eye blindness, social anxiety disorder, depression, chronic back pain, hypertension, and polyarthritis based on examination (suspicious for inflammatory joint disease). (Tr. 23, 315-320).

The ALJ further discussed that in November and December of 2018 Claimant had no complaints regarding her back. Her musculoskeletal examination in November of 2018 was normal and she had normal gait and station. (Tr. 23, 353-57). She was noted to have normal gait and station at all of her appointments from January of 2019 through August of 2019. (Tr. 23-24, 399-400, 403-04, 407-08, 411-12). In February of 2019, Claimant's musculoskeletal examination was normal except for trace edema in the bilateral lower extremities. She also had hypertension. (Tr. 24, 374-76). In July of 2019, Claimant had normal gait and station and normal movement of all extremities. (Tr. 24, 373).

The Court finds no error in the ALJ's consideration of the evidence of Claimant's chronic back pain, hypertension, and possible inflammatory joint disease. He sufficiently accounted for the conditions in the RFC assessment, concluding that Claimant had the RFC to perform light work.

**Consideration of Mental Impairments**

Claimant also argues that the ALJ failed to adequately account for her mental impairments in the RFC and failed to order a psychological consultative examination to assess her mental limitations. She maintains that her attorney made two requests to the ALJ for a psychological consultative examination of Claimant. The ALJ took the request under advisement, but he never ruled on the request, either at the hearing or in the decision. Claimant contends that the consultative examination was necessary to determine her ability to perform work functions based on the evidence contained in the record.

The hearing transcript confirms that Claimant's attorney requested the ALJ order a consultative psychological examination of Claimant. (Tr. 35, 55). The ALJ acknowledged the request and stated he was taking it under advisement. (Tr. 55). The ALJ did not mention the request or set forth any reasons for denying it in the decision. The ALJ's failure to address the request for a consultative examination in the decision, however, is not itself cause for remand, as the question is whether the record was sufficiently developed for the ALJ to make a disability determination. *See Harlan v. Astrue*, 510 Fed. Appx. 708, 712 (10th Cir. 2013) ("Without a statute, regulation, or case requiring an ALJ to rule on a request for a consultative examination or to provide reasons for the ALJ's ruling, the appropriate inquiry

9

continues to be whether the ALJ met his responsibility to ensure the record was sufficiently developed to decide the issues presented at the hearing.") (citation omitted); *see also Lundgren v. Colvin*, 512 Fed. Appx. 875, 879 (10th Cir. 2013) (applying *Harlan* and finding no error "because the ALJ acted within the broad latitude afforded him to decide whether a consultative examination was necessary or helpful.").

The ALJ "has broad latitude" when determining whether to order a consultative examination. *See Hawkins*, 113 F.3d at 1166. A consultative examination may be required when there is a direct conflict in the evidence, the medical evidence is inconclusive, or additional tests are needed to explain a diagnosis. *Id*. Here, the ALJ determined Claimant's mental impairments of depression and anxiety were severe. (Tr. 17). He discussed in detail Claimant's mental health treatment beginning in October of 2017 through August of 2019. (Tr. 21-24, 250-82, 324-44, 395-414). He noted the opinions of the state agency psychologists who reviewed the evidence in the record and determined Claimant could perform simple and some complex tasks, could relate to others on a superficial work basis, and could adapt to a routine work situation. (Tr. 25, 65-70, 82-87). The ALJ found their opinions persuasive, except he reduced Claimant to simple tasks only. He determined Claimant's mental health status exams were within normal limits, her mental health provider had made no medication changes after November of

2018, and Claimant appeared stable. (Tr. 25). Based upon the evidence, including Claimant's testimony, he concluded Claimant had the mental RFC to perform simple, repetitive tasks, interact with supervisors and co-workers occasionally, and she could not interact with the public. (Tr. 19). This Court finds that the ALJ properly acted within his "broad latitude" and did not order a consultative examination, as the record contained sufficient information for the ALJ to make a disability determination regarding Claimant's mental impairments.

### Consideration of Obesity

Claimant next asserts that the ALJ failed to properly consider her obesity. She contends that although the ALJ found her obesity was a severe impairment, he failed to account for its effects in the hypothetical question to the VE, the RFC, and in combination with her other impairments.

Social Security Ruling 19-2p requires an ALJ consider that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" when assessing the RFC. Soc. Sec. Rul. 19-2p, 2019 WL 2374244, *4 (May 20, 2019). "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment(s)." *Id*. at *2. Each case is evaluated based on the information in the record, resulting in "an individualized assessment of the effect of obesity on a person's

functioning[.]" *Id.* at *2, *4. "[G]eneral assumptions about the severity or functional effects of obesity combined with [other] impairments" will not be made. *Id.* at *4.

The ALJ determined Claimant's obesity was a severe impairment at step two. (Tr. 17). When discussing the listings at step three, the ALJ specifically mentioned Social Security Ruling 19-2p and stated that Claimant's obesity was taken into account when determining her RFC. He stated that "[t]he standing, walking, lifting, carrying, and postural limitations in the [RFC] are in part due to obesity." (Tr. 18). In the discussion of Claimant's RFC, the ALJ noted that Claimant testified she had been morbidly obese since the age of 30, which put extra strain on her joints. (Tr. 21). He referenced that at an examination in May of 2019 Claimant's BMI was 42.5. (Tr. 21). He further discussed Claimant's examination in July of 2019, when her BMI was recorded as 42.4, she had normal movement of all extremities, and she was assessed with a BMI of 40+ - severely obese. (Tr. 24). He noted that Claimant's musculoskeletal examinations were within normal limits and there were no radiological reports supporting any joint issues. (Tr. 25). Moreover, Claimant has pointed to no record evidence that her obesity somehow affected her mental state. This Court finds that the ALJ sufficiently considered Claimant's obesity in the RFC determination.

**Evaluation of Subjective Complaints**

Claimant asserts the ALJ failed to properly evaluate her subjective symptoms based upon his errors regarding the medical evidence and his use of "boilerplate" language. She contends that the ALJ failed to consider the side effects of her medication as well as its efficacy.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

When considering Claimant's subjective complaints, the ALJ summarized Claimant's disability report and function report,

13

including her activities of daily living, and Claimant's hearing testimony. He determined that her medically determinable impairments could reasonably be expected to cause her symptoms, but her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence or other evidence in the record. (Tr. 21). He noted that Claimant's treatment history "[was] not indicative of someone with her alleged level of pain or limitation from impairment." *Id*. The ALJ discussed the nature of Claimant's treatment, including medications, specifically noting that Claimant changed medication for her mental impairments and was prescribed a new medication, and later reported that she was doing well. He also discussed that Claimant's mental health examinations were within normal limits. Regarding her physical impairments, he noted that Claimant stopped complaining of back pain, musculoskeletal examinations were always within normal limits, and there were no radiological reports of issues with Claimant's joints. (Tr. 21-25). The ALJ concluded that Claimant's statements about the intensity, persistence, and limiting effects of her symptoms did not support her allegations of disabling pain or functional impairment. (Tr. 21, 25). This Court finds no error in the ALJ's analysis of Claimant's subjective complaints.

Within her argument regarding Claimant's subjective symptoms, Claimant also contends the ALJ improperly ignored the third-party

14

function report completed by her friend. Such reports "are considered 'evidence from nonmedical sources.'" *Keener v. Saul*, 2021 WL 2460614, at *3 (W.D. Okla., June 16, 2021), quoting 20 C.F.R. § 416.913(a)(4). Under the new regulations, "[a]n ALJ is 'not required to articulate how [he] considered evidence from nonmedical sources.'" *Id.*, quoting 20 C.F.R. § 416.920c(d). An ALJ is not, however, absolved from considering non-medical source evidence when formulating the RFC. Such statements from family or friends are still to be considered by the ALJ. *Id.*, n.4 ("[C]urrent regulations continue to require the ALJ to consider 'all the relevant medical and other evidence in your case record' when formulating the RFC."), quoting 20 C.F.R. §§ 416.920(e), 416.945(a)(3).

Here, the ALJ did not specifically discuss the function report completed by Claimant's friend. The ALJ did state in the decision that he "considered the entire record" in making his determinations. (Tr. 17, 19). There is no error, as this Court will take the ALJ at his word that he considered all the evidence in the record, including the report from Claimant's friend. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ 'at his word.'"), quoting *Flaherty*, 515 F.3d 1071. This was all he was required to do, as the ALJ is

"not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 416.920c(d).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of March, 2022.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE